Mr. Coleman. Thank you, Your Honor. Ben Coleman for the appellant, Mr. Mikulak. I'll watch the clock and try to save a little bit of time. Unless the court was going to stop me with any jurisdictional procedural issues, I was going to try to get right to the merits. And what I think is the heart of the government's argument, as most recently articulated in their recent 28J letter, and that is that the court should presume or assume, based on this record, that the judge knew about Henderson and therefore there is no prejudice here. And what I think the problem with that argument is that let's assume that that's correct, that the judge knew about Henderson. There's a second complaint that we have here, which is that there was no discussion or argument about the 2012 Sentencing Commission's report. And so even if you want to assume that the district court judge knew about Henderson, Henderson just opened up a little bit of a crack of the door as to what a judge could do. And it's really the 2012 commission's report which sort of blows that door wide open where the commission has said, look, we think that these guidelines are outmoded, they're disproportionate, and in some aspects are not rational. So even... So is it your position that in every case there has to be an argument to the court that you should disagree as a policy matter with the guidelines? Well, certainly not in every case. Are you talking about every child pornography case? Right, right, obviously. All right. Well, what I think Judge White said in her concurring opinion for the Sixth Circuit in Walters is that competent counsel is expected in child pornography sentencings to raise the commission's 2012 report to inform the judge that the commission itself does not agree with these guidelines, that all these enhancements are outmoded, they're based on facts as they existed 10, 15 years ago before sort of the peer-to-peer networks have come into play. And that's certainly the position that Judge White took. I agree with it, but at the very least there needs to be, if the defense attorney doesn't make the argument, and I can't imagine why a defense attorney wouldn't, there needs to be something in the record that the judge expresses, that he understands that in child pornography cases it's a unique situation where the commission itself is saying we don't agree with these guidelines. Well, if the, we ordinarily expect that judges know the law. They don't necessarily know the facts or how they apply to a particular client. But having had the law in front of it, why should we assume that the district court didn't understand that if, in fact, there was a disagreement on the judge's part with the sentencing guidelines that that was a permissible ground to depart downward? Well, I'm going to assume that the judge did know that, and that's Henderson. I'm going to assume the judge knew Henderson, that he could, as a policy matter, disagree with the guidelines and vary or depart. I'm going to assume the judge knew that, although I think on this record it's not so clear. I'll assume that. But the problem is that there is no, the sentencing commission's 2012 report, I guess I would call that sort of a mixed fact and law. It's a fact that the commission has done this, but there's, it's kind of a legal document. It's a legal report that they have issued pursuant to their statutory authority. And there is no indication in this record that the judge understood that the commission has now, subsequent to Henderson, has now published their review and said, look, we think the guidelines need to be changed. These are outmoded and disproportionate. And so it's a, I think that's a different, it's a different piece of authority that the judge, that there's nothing in this record to reflect that the judge understood that piece of authority. I guess what I get stuck on, to be honest, is just that, I guess you were not, you obviously were not counsel below. No. But the lawyer did make a compelling case on all sorts of grounds for departing below whatever the guidelines range was. Right. And the judge listened, I think was certainly sympathetic in some respects to your client and nonetheless said, but I think this is the right sentence. And I guess I'm not seeing why if you, especially once you, the government has pointed out that actually the government, the government at least had pointed out that legally, you know, there was this Henderson case. I just don't see why, okay, throw in the report and all of a sudden the judge, oh, well now if you tell me that, now I'm going to go below, what was it, 121? Well, I mean, I think there is a basis in this record to think that perhaps the judge would do that. And that is if you listen to what the judge said, he heard all these compelling facts about his rehabilitation and everything. And he says, his main reason is, look, I have to have consistency here. I just opposed a 97-month sentence based on the low end of the guidelines for a guy who had two points less. I need to have consistency. That's his main rationale. Why isn't that a permissible rationale? Even under Henderson, even after the Sentencing Commission said what it said, a district judge does not have to disagree with the guidelines in their current form. Absolutely. I'm not saying that he would. So why isn't that reasoning just as applicable? I mean, why would we assume prejudice here or find prejudice? Well, because it appears on this record. I'm not saying that there's necessarily anything wrong with that reasoning. But what this judge appears to be doing is doling out the guideline sentences and thinking that consistency is the basis for that. Well, what I understood the judge to be saying is I've had a lot of these cases and I'm trying to factor in all the characteristics of the crime and the criminal and be proportional depending on what those factors tell me. So I want to be consistent in how I treat worse crimes worse and less crimes less, implicitly not disagreeing with the guidelines, which is still permissible under Henderson and under the Sentencing Commission. It is permissible, but I guess the point is that there's the judge, I think, is thinking he's doing a consistency. He's trying to achieve consistency, but there's no recognition of the fact that four out of every five defendants get much below the guideline sentence. So he's thinking he's doing something consistent, but he's doing something consistently high and there's no – Well, it was below the guidelines range here. Well, it wasn't below the stipulated guideline range. He gave the low end of the stipulated range. But it was lower than it could have been. I mean, you guys – or not you, but his lawyer did a good job, I think, getting it to where it was. But I'm still – I don't know. The judge is not required to depart downward. The judge was presented with a multitude of reasons for doing so, knew that he had the legal authority to do so, but I just don't see how you throw in this one little – not little, but this one extra fact that that changes the mix enough for us to find that your client was precious. I just don't see the likelihood that the judge, even had he known about that report, is going to have gone below 121. Well, I guess the standard is I don't have to show that it's likely he would have done that. I just have to show that there's a possibility that he would have gone lower. Counsel, I have one sort of question one step back about this, and that is that ordinarily we don't entertain ineffective assistance claims on direct appeal. That is extremely rare. And we don't have anything in this record about why counsel might have chosen not to make these arguments. Why should we decide this at all in this appeal? Well, the government – I stated that general proposition of law, and the government did too, but they've really articulated no potential tactical reason for failing to raise it. Well, they don't have to. They're not in the mind of the defense lawyer, but we almost never entertain these cases on direct appeal. It's extremely rare. And why wouldn't we want to know what was in the mind of the lawyer for taking the attack that was taken here? Well, I mean, I can conceive of no permissible tactical reason not to cite the best authority that you have to make a legal argument, and that's sort of kind of what I think Your Honor actually wrote Tillcock, and that's what happened in that case. The issue, I don't think there was really much development of the deficient performance prong, and this court said, well, look, we can't imagine, you know, why the lawyer would not make such an argument. He has everything to gain and nothing to lose. That's actually the language used in the opinion. So I think that you can reach it based on this record, but we also have sort of the plain error, the judge failed to consider the issue. So if you think that the IAC claim is not properly before the court, we still have essentially the same argument in the context of plain error as to the judge not recognizing this authority. So I don't know if that procedural issue matters as much. I realize I'm almost out of time. I wanted to respond to Judge Wofford's question. I had just said that, you know, legally I don't have to show that it's likely that he would have done it. I just have to show that it's possible that he would have done it. But I just don't see any likelihood that the judge would have gone down with that added fact thrown into the mix. But what's your response? Well, I guess the point, I mean, I've already stated it, but when the judge, I mean, is saying I want to have consistency, and it may be that he wanted to have consistency between this defendant and the defendant that he had just sentenced earlier that morning, but 3553A6 requires broad range consistency among all defendants. And if the judge is not realizing that most judges, four out of five, are sentencing well below the guidelines, as the commission's report reflects, the judge may wake up, you know, wake up, I don't mean to use that terminology, but he may look at it and say, you know, well, maybe I'm doing things that are inconsistent because I'm going, I'm just going straight guidelines and a lot of other judges aren't. And I think there's at least a possibility that the judge would have done something different. Thank you. Thank you. We'll hear from the government. Thank you, Your Honors. May it please the Court, Mark Ray for the United States. I think the first point I would like to make is one that was raised by Judge Graber. Actually, not only is the normal rule that this Court does not reach issues of ineffective assistance counsel on direct appeal applicable, here there are, I mean, there could have been a reason. I know my opponent says he can't see. A possible reason could there be for not citing Henderson in the report? That makes no sense to me. I would submit the following, Your Honor. For all we know, this particular judge may have a predilection. As he said, he's had many of these cases before. Maybe it turns out that this kind of argument gets nowhere with that judge. I would point this Court to page 695 of Strickland. But in the papers, there's no, there cannot possibly be a penalty for putting an argument in your papers. Maybe you're right that that would be a reason to not stress it at the hearing, and especially when there were so many other compelling facts that would have warranted a departure here. But to not put it in the papers? You think there's some penalty the judge was going to be? Fair enough. But I'd say not a penalty. But I'm saying on a cold record, we don't know. And as Your Honor pointed out, I mean, this defense counsel did a very thorough job in his sentencing papers. He came up with, you know, 10 pages of, there seems to be a lot of feedback here, I'm sorry, a lot of reasons. But even if you assume that it was deficient, and we'll just say for sake of argument, I don't think there's any reasonable likelihood of prejudice here. Now, I know my opponent talks of merely just having a possibility of a different decision, and he cites Ninth Circuit case law. But, you know, I've got a copy of Strickland right here on page 693. The Supreme Court says it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings. Virtually every act or omission of counsel would meet that test. Not only that, I would say the one thing that's been absent, even from my opponent's presentation today, is any discussion of the particular facts of this case. I mean, when one looks to, I know my opponent cites the Henderson case, Judge Berzon in concurrence there said, you know, two of the problems that she saw with the guidelines, the first is that when you apply these very, you know, these specific offense characteristics, many times the guideline range already comes close to the statutory max. Well, in that case, Henderson, it was about possession, which has a 10-year stat max. This is a receipt case with a 20-year stat max. And when the guidelines come in at 121 to 150 months, that's half of that. So that's a reason that, you know, that Judge Berzon, and I think she got that from the Second Circuit's decision in Dorvey, that doesn't apply here. The second point that she made was that oftentimes the guidelines for non-production offenses suddenly become more than those for contact offenses. And she cited a minimum of 150-month low-end range for a contact offense. Again, here the minimum was the low-end was 120 months. So all I'm saying by these points is, you know, it's one thing to say in the ether, oh, well, there's this 2012 report and there's grumblings about the guidelines, but show me where it matters. On the facts of this case, I mean, this defendant wasn't just a casual user. If you look at page 4. 60,000 images or something like that. Correct. And the threshold for that five-level specific offense characteristic is 600. So that's ten times more. And that's just the static images. It's 100 times. Sorry. I was an English major. I was, like, visualizing how many zeros. Right. I apologize. But my point being that it's almost, you know, an order of magnitude. I mean, this is not your typical chobhorn case. And by his own admission, he had been doing this for seven to eight years. This wasn't something new. Well, it's not typical, but in a bunch of reasons that go in the defendant's favor. I mean, just out of curiosity, so why was he allowed to remain free for a year? Well, it's my understanding. I've never even seen the case. I mean, a person who's going to get ten years in prison, just they discover the crime and say, oh, we'll be back in a year. Go on about your business. That just struck me as very odd. Well, I think, you know, with the caseload and with the amount of time it takes for the forensics to process the images, I mean, this defendant, when you have the 60,000 static images, let alone the 1,000 videos, I mean, that's my understanding. And, sure, that fact pointed in his favor. I mean, am I wrong in thinking that this was a guy that everyone recognized? He said sort of like, I'm almost glad that you caught me. I want to get help. I'm going to go get help. And, in fact, did that, right? He did to some extent.  And two points about that, Your Honor. First of all, everything you just said was said by the defense counsel to the court. So the court exercised its discretion. But one other thing I want to point out, and not to take away from what this defendant did, it is unusual, what he did was, if I read the record right, I guess he had eight or nine months, he went to Sexaholics Anonymous. He wasn't seeing a psychiatric professional. When the defense makes an argument that, oh, I had successful rehabilitation, look for the record's site. It takes you, I believe, to page four of the pre-sentence report, where it's the defendant himself saying, I feel like I'm succeeding. But then look two paragraphs up in the same PSR. The defendant admits that he tried to quit before a couple times, and he didn't. So all I'm saying is, yes, he should be commended for that. And that's, in fact, exactly what the district judge said. But, you know, I guess that goes more to the third issue on appeal. I mean, if it's an abuse of discretion standard, I'm just saying, it's not like he showed up at sentencing with a certified paper. I don't know if such a thing could ever exist from a psychiatrist saying, you know what, he's cured. No, he's going to meetings, group meetings, and that's great, and he is to be commended. The district court did that. But, you know, I don't think with the substantive reasonableness, I mean, you know, the defense was already arguing for five years from the get-go, because that's the mandatory minimum. What he got was 10. So when you look at, you know, what made this case different, again, I'd point out, by his own admission, he had a, you know, the numbers were astounding. And he even said, I believe this is on page four of the pre-sentence report, just a few months prior, he had actually been having online conversations with young girls, I believe a 12-year-old girl. And he, in fact, even made a plan to meet up with her. And those conversations were of sexual nature. She just didn't show up. So, I mean, this is not, you know, I wanted to make sure I made this point before I go back to San Diego. I mean, this court, despite whatever that 2012 report says, despite whatever Henderson says, this is not somebody who represents, you know, wow, it was just a first-time foray of a few months who had a few hundred images. I mean, this is the other side of that spectrum. And that goes to substantive reasonableness is for the claim of procedural. But this is someone, am I remembering right, that had absolutely no, not even a criminal record. He just had no contact with law enforcement up until this point, period, right? Correct. He's like in his late 40s. Yeah, I believe 47. He's gone through his whole life, never been in any trouble, recognizes that he has a problem. I mean, usually for first-time offenders, boy, if a year or two in prison isn't enough to get you back on track, right? It's not like five, an extra five or ten years tacked on top of that is going to make the difference. So I'm just, I'm a little surprised that he got as much time as he did. But that's why, from my standpoint, you know, recognizing, I guess, whatever information was in that sentencing guidelines report, I haven't read it personally. But I just can't imagine that if you add that into the mix, that that would have caused the judge to go down. There were already so many other reasons to go down anyway. That, to me, is what is kind of the strongest point in the government to say for years. And I would agree with that, Your Honor. And as far as the claim of procedural error, too, I mean, not only did the defense, you know, the government pointed out, hey, district court, you have the power to vary. There's a lot of other courts that find, you know, because it's not empirically based, you can do this. The defense counsel made all these arguments in mitigation. And one thing I would say on that second issue on appeal, this is under plain error review. This Court always reviews substantive reasonableness for abuse of discretion. But procedural errors have to be preserved. I would also submit for this Court's consideration, it has often been said under the first prong of plain error review, in order to be plain, an error has to be so obvious that a competent district judge would notice it without benefit of objection. What my point would have you do is extend that rule, not even in the context of the guidelines, where at least we can say open up to page 200 of the book and you know you need to kind of hit X, Y, and Z. He wants to extend that rule for you to find plain or obvious error to an unenumerated 3553 consideration, which I would submit is an unwarranted extension of the law. I mean, he has to, you know, tell you that it's plain error for the district judge to fail to consider a claim that was never put in front of it. At least in Henderson, I think if you read the last sentence of that majority opinion by Judge Fletcher, it says that district court was squarely presented with a claim based on Kimbrough discretion, and therefore, you know, they remanded. But even then they said we emphasize that not all 2G 2.2 sentences are unreasonable, and we emphasize that district courts are free to not have a policy disagreement. So I would submit where this argument wasn't even raised below, it would seem somewhat unfair to Judge Whelan to say, well, you know, we're going to find that you committed obvious error by failing to consider something that was never even put in front of you. So unless the court has any further questions, the government would submit. All right. I think we don't have any further questions. Thank you. Thank you. All I'm asking for is a remand. If the judge does, I mean, the judge gave him the low end, he gave him 121 months. It's not like he gave him the high end or the mid range. I mean, it's is it possible that maybe had the judge been informed of the commission's report, he might have rethought this consistency rationale and gone lower. It's possible if the judge disagrees, he disagrees and he goes, he sticks with the 121. We're not talking about a whole new trial. That's why even in plain error context, this court has said, you know, in sentencing, when it comes to sentencing errors, we're more willing to send the case back. We're not this isn't a huge amount of judicial resources and expense that's going to unfold. If we have a new sentencing hearing, it'll be a relatively quick proceeding. The judge can be presented with a proper defense argument about Henderson and the commission commission's report. And if the judge exercises discretion, even though there are all these mitigating facts and says, I considered everything, I'm sticking with 121, so be it. But at least give this defendant who has some mitigating facts in his favor, the opportunity to have a proper sentencing presentation and to give the judge the opportunity to explore everything. I mean, 10 years is a long, long time. But sending a case back to a district court judge is not a light thing. I mean, it's still the expenditure of judicial resources. And if every defendant got a chance to go back, every defendant who appeals his sentence gets an opportunity to go back and have a rehearing, that would overwhelm the courts. I don't think it should be done lightly. Absolutely. But when you have a defense lawyer who does not present the binding Ninth Circuit case with the argument and you have a commission's 2012 report that every, that Sixth Circuit judges, every competent defense lawyer should raise at the time of a child pornography sentencing, and he just doesn't do it, there's cause to send it back. I'm not just saying send it back willy-nilly. I thought you were saying it's not that much of a burden to do that. And it is. It's not something that should be done lightly. That's all I'm saying. Okay. Thank you, Your Honor.
judges: Graber, Rawlinson, Watford